IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES WALZ, | : | No. 4:06-cv-1434 |
| | : | |
| Plaintiff | : | (Judge Jones) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Smyser) |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social | : | |
| Security,[1] | : | |
| Defendant | : | |

## MEMORANDUM

## April 17, 2007

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

On March 19, 2007, Magistrate Judge Smyser filed a Report and

Recommendation (doc. 9) reviewing the appeal of the Commissioner's decision to

deny Plaintiff Albert L. Johnson, Jr.'s ("Plaintiff") claim for Social Security

Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act

("Act"). Magistrate Judge Smyser recommends that the case be remanded to the

Commissioner.

On April 3, 2007, the Commissioner filed objections to the Magistrate

---

[1] Michael J. Astrue became the Acting Commissioner of Social Security, effective February 12, 2007 to succeed Linda S. McMahon.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

Judge's report. (Rec. Doc. 10). On April 10, 2007, the Plaintiff filed a brief in opposition to the Commissioner's objections. (Rec. Doc. 12). This matter is now ripe for our review.

**PROCEDURAL HISTORY:**

The Plaintiff filed an application for DIB on June 7, 2004. He claimed that he became disabled on November 16, 2001, as the result of neck fusion, back pain and left foot pain. His claim was denied initially and on reconsideration. The Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ") on March 7, 2006. At the hearing, the Plaintiff and a vocational witness testified.[2] The ALJ issued a decision on March 20, 2006 denying the Plaintiff benefits. (TR 13-19)

Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied, making the ALJ's decision the final decision of the Commissioner. (TR 6-8).

The ALJ's decision is the subject of the instant appeal. The Plaintiff filed his complaint with this Court on July 21, 2006, contending that (1) the ALJ erred in finding that the opinion of Dr. Gupta that the Plaintiff is disabled is not supported

---

[2] Magistrate Judge Smyser notes that the ALJ did not use the vocational witness testimony in his decision and the parties did not advance arguments based on the vocational witness's testimony, and therefore he did not summarize the vocational witness's testimony in his report. (Rec. Doc. 9 at 3).

by the objective physical findings, and (2) and that the Plaintiff's testimony regarding his symptoms was not credible.

**STANDARDS OF REVIEW**:

    **A.**    **Review of Magistrate Judge's Report**

When objections are filed to a report of a magistrate judge, we make a *de novo* determination of those portions of the report or specified proposed findings or recommendations made by the magistrate judge to which there are objections. See United States v. Raddatz, 447 U.S. 667 (1980); see also 28 U.S.C. §636(b)(1); Local Rule 72.3l. Furthermore, district judges have wide discretion as to how they treat recommendations of a magistrate judge. See id. Indeed, in providing for a *de novo* review determination rather than a *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. See id., see also Mathews v. Weber, 423 U.S. 261, 275 (1976); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

    **B.**    **Review of the Denial of Disability Benefits**

When reviewing the denial of disability benefits, the Court must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058 (3d Cir. 1993).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

### C. Eligibility Evaluation Process

A five-step evaluation process is used to determine if a claimant is eligible for

disability benefits. See 20 C.F.R. § 404.1520. See also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a claimant is not disabled at any point in the five-step sequential process, the review does not proceed. 20 C.F.R. § 404.1520.

Step one requires a claimant to establish that he has not engaged in "substantial gainful activity." 20 C.F.R. § 404. 1520(b). Step two is an evaluation of whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). At step three, the Commissioner must then determine whether the claimant's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4. 20 C.F.R. § 404.1520(d).

If the Commissioner determines that the claimant's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the claimant has established that he is unable to perform his past relevant work. 20 C.F.R. §§ 404.1520(e)-(f). The claimant bears the burden of demonstrating an inability to return to his past relevant work. Plummer, 186 F.3d at 428. If the claimant is able to demonstrate this, then the burden of proceeding shifts to the Commissioner, at step five, to demonstrate that other jobs exist in significant numbers in the national economy that the claimant is able to perform, consistent with his medically determinable impairments,

functional limitations, age, education and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c). The Commissioner is also to consider the claimant's stated vocational factors.

**FACTUAL BACKGROUND**:

<u>Plaintiff's Work History and Injury</u>

Plaintiff was born July 14, 1962, making him forty-three (43) years of age at the time of the hearing on March 7, 2006. (TR. 26). The highest grade completed by him was the 11th grade, and all of Plaintiff's past relevant work was as a stone mason. (TR. 200).

 The Plaintiff fell from a scaffold on November 16, 2001 and has not worked since. He testified that he experiences severe pain in his ankle, back and neck, however his back and neck problems preceded the fall. He testified that he has rejected back surgery. Plaintiff testified that his lower back and ankle are always in pain, his neck is stiff, and he gets headaches and experiences wrist pain. Plaintiff further testified that physical activity worsens his pain, and can cause his back to "go out."

Plaintiff has undergone left ankle surgery, during which screws were inserted into his ankle bones, and then were later taken out. He apparently declined ankle fusion surgery and now experiences constant ankle pain. Also, in 2001, Plaintiff

underwent neck cervical spinal fusion.  Plaintiff still experiences occasional upper back pain.

Plaintiff testified that he takes Oxycontin for pain and also takes muscle relaxers, as prescribed by Dr. Gupta.  Plaintiff testified that he has been taking Oxycontin for five years.

Plaintiff testified that he can sit for two hours, can stand for one hour, and can lift fifty pounds.  Plaintiff testified that he would be uncomfortable working for an eight-hour day, spends most of his days watching television and does not do household chores.  He further noted that he has bad days about seven days a month, and could not work on those days.  Plaintiff testified that he would work if he could.

Medical History

Following the fall in 2001, Plaintiff saw an orthopedist on December 11, 2001, who examined x-rays and recommended that Plaintiff have an open reduction internal fixation of the ankle, with screws on the medial side. (TR. 154).  The Plaintiff underwent the surgery, performed by Dr. George Primiano, on December 14, 2001.  (TR. 111).  After the surgical procedure, due to persistent swelling and limitation of motion, Dr. Primiano referred Plaintiff to orthopedic surgeon Jason Rudolph in October 2003. (TR. 113).

Dr. Rudolph determined that there were degenerative changes involving the medial ankle articular surface with a narrowing of the joint space and possible gapping from the previous fracture site. (TR. 125). Dr. Rudolph decided to perform a second surgical procedure in order to do a debridement to the ankle joint. (TR. 124). During the procedure, which was performed on November 14, 2003, it was noted that there were grade 3 (i.e. severe) degenerative changes involving the residual medial talar dome as well as the medial tibial plafond region. An "extensive debridement" was performed in the medial ankle joint, removing "a significant amount of hypertrophic scar tissue, as well as loose cartilage." (TR. 118).

On December 4, 2003, Dr. Rudolph reviewed the results of the surgery with the Plaintiff and advised him that he had "advanced degenerative arthritis throughout the ankle with an area measuring approximately 1.5 cm of a complete boney eburnation." (TR. 123). As of January 8, 2004, Dr. Rudolph considered the Plaintiff as having reached maximum medical improvement with a diagnosis of post traumatic degenerative arthritis of the left ankle, with the only alternative being an ankle arthodosis. (TR. 122). On May 21, 2004, the Plaintiff continued to complain of pain and received a cortisone injection in the left ankle joint by Dr. Rudolph. (TR. 121).

In June 2001, at age thirty-eight, Plaintiff, he underwent a disectomy and innerbody fusion at C5/6-C6/7 at Temple University Hospital, after having complaints of neck and arm pain which were not resolved by conservative management. (TR. 103). After surgery, Plaintiff returned to work as a stone mason but continued to experience neck and back problems. On Februrary 23, 2001, Plaintiff first saw Dr. Gupta, a Board Certified Neurologist. Dr. Gupta diagnosed left-side C6 radiculopathy. (TR. 177). On March 8, 2001 Plaintiff underwent an MRI of the cervical spine, which revealed that the condition necessitated further subsequent spinal surgery. (TR. 195).

Also on March 8, 2001, Plaintiff underwent an MRI of the lumbar spine, which showed "marked degenerative disc disease with narrowing of the L4-5 intervertebral disc space with bulging annulus and degenerative changes causing mild central canal spinal stenosis and some narrowing of the neural foramina at the L4-5 level." (TR. 194). He had a subsequent lumbar MRI on November 11, 2003, which also showed extensive degenerative changes at L4-5, the reader of the MRI noting that it essentially was unchanged from the previous examination. (TR. 191).

Dr. Gupta ordered an EMG of the right arm which was performed on July 13, 2002. The EMG showed evidence of right-sided C5, C6 and C7 radiculopathy. (TR. 192). Plaintiff was prescribed Skelaxin, Oxycontin and Percocet on August

9

29, 2002. (TR. 171). Plaintiff saw Dr. Gupta again in December 2002, complaining of a sore neck, back pain and left ankle pain. In February 2003, Dr. Gupta continued Plaintiff's prescription for Oxycontin and Percocet and prescribed lumbar epidural injections. (TR. 170).

As of June 30, 2003 Plaintiff had received three epidural injections given by Dr. Kothari. On June 20, 2003, Plaintiff underwent an additional MRI scan of the cervical spine, which showed "a rather large posterior osetophyte at C5-C6 which is located centrally and to the left causing narrowing of the spinal canal and narrowing of the normal foramina." (TR. 169). Plaintiff continued to see Dr. Gupta through the remainder of 2003 and 2004, and was prescribed Oxycontin, Skelaxin and Amatryiplyne. (TR. 165-169).

In January 2005, Plaintiff complained of pain in the left side of the neck going to the left shoulder and left upper area, as well as burning pain over the left trapezius. Plaintiff complained of pain over the left buttock and lumbar area, radiating tot he right thigh and back of the right leg. Plaintiff was unable to put weight on his left foot and began to depend on his right foot to stand. (TR. 165). Plaintiff continued to experience the same unabated symptoms through the last date that he saw Dr. Gupta on this record on June 1, 2005). Plaintiff saw Dr. Gupta a total of thirty two times from February 2001 through June 2005. (TR. 164-177).

Dr. Gupta completed a questionnaire at Plaintiff's request dated February 16, 2006. (TR. 186-190). Dr. Gupta indicated that the Plaintiff's diagnosis was severe radiculopathy and left ankle injury, with a prognosis of "poor." Dr Gupta indicated that Plaintiff's symptoms were neck pain, low back pain, right leg pain, and left ankle pain, and that Plaintiff was taking Oxycontin, Skelaxin, Amatryiplyne and Tegretol. (TR. 186). Dr. Gupta opined that Plaintiff would experience pain or other symptoms severe enough to interfere with attention and concentration on a constant basis, and would be incapable of even low stress jobs. (TR. 167). The Plaintiff could walk less than a block, sit for only 1 hour, stand for only thirty minutes, and do a combination of standing and walking in an eight hour day only for two hours. (TR. 186). The Plaintiff could never lift ten pounds and could only rarely lift less than ten pounds. The Plaintiff's impairments would likely produce good days and bad days and result in Plaintiff missing more than four days of work per month. (TR. 189).

Vocational Expert Testimony

The vocational expert ("VE") testified that a hypothetical claimant who could sit no more than two hours, stand no more than one hour occasionally lift up to fifty pounds but not on a frequent basis, who may or may not be able to work an entire day due to pain and medication would not be able to find work in the national

11

or regional economy. (TR. 213). The VE also testified that a claimant who would miss up to four days a month would not be suitable for work, as only six to ten working days annually is allotted for missed work. (TR. 213-214).

ALJ's Determination

The ALJ determined that the Plaintiff could perform a full range of sedentary work and therefore found that the Plaintiff was *not* disabled. (TR. 18). The ALJ found the Plaintiff's testimony not entirely credible. (TR. 16). Within his decision, the ALJ cited a functional capacity evaluation referred to by Dr. Primiano in October 2002 (TR. 143) but not contained in the record, which indicated that the Plaintiff was capable of performing heavy work in a seated position. The ALJ also relied upon the findings of a Social Security Administration consultive examination dated August 25, 2004 which found that the Plaintiff was capable of doing sedentary work. (TR. 122-128).

**DISCUSSION:**

As noted earlier within this Memorandum, Plaintiff maintained that the ALJ erred in two different areas when denying his disability claim. Magistrate Judge Smyser reviewed the Plaintiff's contentions that the ALJ erred and concluded that the ALJ had, in fact, erred. The Commissioner objects to the Magistrate Judge's report, arguing that the ALJ did not err in rendering his decision to deny Plaintiff

benefits.  We shall discuss the merits of the Defendant's objections.

### 1. Whether the Magistrate Judge Erred in Finding that Substantial Evidence did not Support the ALJ's Determination that Plaintiff Could Perform Sedentary Work

The Commissioner objects to the portion of the Magistrate Judge's report that concluded the ALJ improperly evaluated Dr. Gupta's opinion and relied too heavily on Dr. Primiano's opinion.  The Magistrate Judge stated that the ALJ gave "conclusory and essentially unexplained" reasons in finding that Dr. Gupta's opinion was entitled to little weight.  (Rec Doc. 9 at 9).  Further, Magistrate Judge Smyser stated that Dr. Primiano's opinion was ambiguous because (1) "one can not infer that Dr. Primiano factored the relationship between a particular patient's known impairment(s) and his pain symptoms in to his 'sit-down type work' opinion" and (2) the opinion may not have extended "beyond the plaintiff's ankle condition." (Rec. Doc. 9 at 9-11).

Magistrate Judge Smyser notes that in a case such as this, where there are clear and objectively known physical impairments, the Commissioner's task is to determine whether the subjective pain symptoms could reasonably be caused by the objectively known impairments.  See 42 U.S.C. § 423(d)(5).  The Magistrate Judge concluded that the ALJ did not address this central issue inasmuch as while the ALJ cited to Dr. Primiano's reports, Dr. Primiano did not address this issue.

Magistrate Judge Smyser reasoned that one could

> "not infer that Dr. Primiano factored the relationship between a particular patient's known impairment(s) and his pain symptoms into his "sit-down type work" opinion.  Dr. Primiano may as likely have been indicating in making this statement that Walz can perform sit-down type work if his pain level will tolerate it as that Walz can perform sit-down type work based upon a certain assumption or finding that the doctor had made about Walz's pain level as a function of his objectively known impairments.  It is also not clear, as the plaintiff points out, that Dr. Primiano's frame of reference in advancing his 'sit-down type work' assessment went beyond the plaintiff's ankle condition."

(Rec. Doc. 9 at 11).  Magistrate Judge Smyser further noted that "[t]hese phrases used by doctors in medical reports, not in depositions or other proceedings involving focused questioning in a fact-finding proceeding, are not reliable bases for findings such as the finding for which the ALJ here used this phrase in Dr. Primiano's report."  (Rec. Doc. 9 at 11).

Following a review of the ALJ's decision (TR. 13-19), we are moved to make the same observations as Magistrate Judge Smyser.  The ALJ essentially dismissed Dr. Gupta's opinion without any analysis.  This was improper under the circumstances. Furthermore, we find Magistrate Judge Smyser's reasoning regarding Dr. Primiano's opinion to be persuasive.  When Dr. Primiano opined that Plaintiff could perform "sit-down type work" it is not at all clear that he was defining "sit-down type work" as "sedentary" work, as defined by the regulations.

We find that the combination of the conclusory dismissal of Dr. Gupta's opinion and the questionable use of Dr. Primiano's opinion of "sit-down type work" supports a conclusion that the ALJ's decision was not supported by substantial evidence.

> **2.   Whether the Magistrate Judge Erred in Finding that Substantial Evidence did not Support the ALJ's Determination that Plaintiff's Subjective Complaints were not Fully Credible**

As the Commissioner properly submits, when determining whether a claimant can perform other work, the ALJ may consider the claimant's subjective complaints. See 20 C.F.R. § 404.1529(a). An ALJ first determines whether the claimant has medically determinable impairments that could cause the claimant's symptoms. See 20 C.F.R. § 404.1529(b). If the claimant has medically determinable impairments that could cause the claimant's symptoms, the ALJ will then determine whether the claimant is accurately portraying the extent of his symptoms. See 20 C.F.R. § 404.1529(c).

Magistrate Judge Smyser concluded that the ALJ did not determine whether the Plaintiff's pain symptoms were reasonably related to his known impairments. (Rec. Doc. 9 at 12). Magistrate Judge Smyser noted that the ALJ did not state precisely which of Plaintiff's testimonial assertions he found to be uncredible. Magistrate Judge Smyser found that it was not "self-apparent that the plaintiff's

reporting of his pain symptoms is not credible.  He had been taking pain medication for over six years.  A more complete consideration of subjective symptoms is necessary to satisfy the Commissioner's . . . burden."  (Rec. Doc. 9 at 14).

We agree with the Magistrate Judge that the ALJ did not adequately consider the Plaintiff's subjective complaints against the objective evidence when determining that the Plaintiff's testimony was lacking credibility. As such, the ALJ's determination regarding the Plaintiff's credibility is conclusory at best.  (TR. 16). We agree with Magistrate Judge Smyser's recommendation that substantial evidence did not support the ALJ's determination that Plaintiff's subjective complaints were not fully credible, and our separate Order will so reflect.

## **CONCLUSION**

Accordingly, for the foregoing reasons, the Commissioner's objections to the Report and Recommendation of Magistrate Judge Smyser are overruled.  We shall adopt the report in its entirety and remand this matter to the Commissioner for consideration of whether the Plaintiff's symptoms can reasonably be expected to be produced by his known impairments.  An appropriate Order shall issue.